2007-NMCA-070

160 P.3d 601

**STATE of NEW MEXICO ex rel. CHILDREN, YOUTH & FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**BENJAMIN O., Respondent–Appellant,**

and

**In the Matter of Lakota C., a Child.**

No. 26,551.

Court of Appeals of New Mexico.

April 19, 2007.

Children, Youth and Families Department, Simon Romo, Acting Chief Children's Court Attorney, Daniel J. Pearlman, Santa Fe, NM, for Appellee.

Jane Bloom Yohalem, Santa Fe, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} Father appeals the termination of his parental rights by the district court pursuant to NMSA 1978, § 32A–4–28(B)(2) (2001). (We use the statutes in effect at the time of the filing of the petition.) This case presents an issue of first impression in New Mexico dealing with the question of what steps the district court and CYFD should take following the appellate reversal on substantive grounds of a prior adjudication of abuse and neglect while CYFD is in the process of attempting to terminate a parent's parental rights. We take this opportunity to clarify the procedure that should be followed after a reversal of an adjudication of abuse and neglect on these grounds. Because we conclude that the district court did not make adequate findings such that we could determine whether the appropriate procedure was followed or whether sufficient grounds exist to terminate Father's parental rights, we reverse and remand.

## BACKGROUND

{2} This is the second appeal to this Court involving the alleged abuse or neglect of Child. *See State ex rel. CYFD v. Shawna C.,* 2005–NMCA–066, 137 N.M. 687, 114 P.3d 367. Mother and Father previously appealed a December 15, 2003, decision by the district court that adjudicated Child abused or neglected by Mother and Father. *See id.* ¶ 1. On appeal, our Court affirmed the adjudication of abuse or neglect as to Mother, but reversed the adjudication of abuse or neglect as to Father. *Id.* ¶ 40. Subsequently, Mother's and Father's parental rights were both terminated on February 15, 2006.

{3} Child was born in April 2003. After witnessing an argument between Mother and Father at the hospital following Child's birth, hospital staff notified the Children, Youth and Families Department (CYFD) of concerns regarding Child's safety. *Id.* ¶ 3. CYFD responded and allowed Father to take Child home from the hospital. *Id.* Mother and Father were not married and were no longer in a relationship at the time of Child's birth. *Id.*

{4} One month later, Mother contested custody of Child. *Id.* ¶ 4. The domestic relations court placed Child in the legal custody of her paternal grandmother (Grandmother), "concluding that Father was not a suitable caretaker based in part on the court clinician's view that he lacked empathy and parenting ability and had a criminal record." *Id.* The court also ordered that Child was not to be left unattended with Father. *Id.*

{5} Child then lived with Grandmother and Father until August 2003, when Grandmother tested positive for controlled substances. *Id.* ¶¶ 5–6. CYFD filed an abuse and neglect petition against both parents, alleging that neither parent was sufficiently capable of caring for Child, and took Child into protective custody. *See id.* ¶ 6.

{6} In December 2003, Child was adjudged to be an abused or neglected child under NMSA 1978, § 32A–4–2(B)(1), (E)(2), and (E)(4) (1999). *See Shawna C.,* 2005–NMCA–066, ¶ 8, 137 N.M. 687, 114 P.3d 367. With respect to Father, the district court concluded that Father abused or neglected Child based on:

(1) testimony of the court clinician and the psychologist, neither of whom observed Father with Child, who found Father to be not empathetic enough; (2) allegations that Father is angry, either at CYFD and Mother, or generally; (3) the psychologist's opinion noting that Father's personality traits are "broadly correlated" with those who may be violent, although there was no evidence of Father's being violent to Child; and (5)[sic] Father's criminal history, which rendered him presumptively at risk as a parent, in the psychologist's view.

*Id.* ¶ 22. At the time of the adjudication, Father testified that he had "a full-time job, was no longer living with Grandmother, had a suitable apartment, and would like to raise his daughter." *Id.* ¶ 19. Father and Mother both appealed the district court's decision. *Id.* ¶ 1.

{7} While the parents' appeals were pending, the district court continued to monitor both parents' progress under treatment plans recommended by CYFD and adopted by the court. *See State ex rel. Children, Youth & Families Dep't v. Frank G.,* 2005–NMCA–026, ¶ 42, 137 N.M. 137, 108 P.3d 543 (holding that "[w]hile an appeal of an abuse and neglect adjudication is pending, the children's court has jurisdiction to take further action in the case under Section 32A–1–17(B) which states that an appeal to this Court 'does not stay the judgment appealed from' "), *aff'd sub nom. In re Pamela A.G.,* 2006–NMSC–019, 139 N.M. 459, 134 P.3d 746. As part of his treatment plan, Father was required to submit to random urinalyses, attend visitations with Child, participate in a psychiatric evaluation, participate in a domestic violence evaluation, obtain safe and stable housing, pay child support, participate in parenting classes, and attend Child's doctor's appointments at CYFD's discretion.

{8} At the initial judicial review, held on January 12, 2004, the district court found that CYFD had engaged in reasonable efforts to implement the treatment plan. The court further found that the parents had made substantial efforts to comply with the

treatment plan, but needed to do more. The district court concluded that Child should remain in the legal custody of CYFD.

{9} By the time of the permanency hearing in July 2004, the district court found that Father had made reasonable efforts to comply with the treatment plan and that he was "almost ready for a transition home with services in place." The court noted, however, that Father still needed to obtain stable housing, deal with outstanding warrants, and arrange for in-home services before Child could be returned to him.

{10} Father's progress under his treatment plan led CYFD to consider returning Child to Father. Father was referred by CYFD to Peanut Butter & Jelly's (PB & J) home-based services program to begin time-limited reunification services. Father, however, did not yet have stable housing, which was required for the time-limited reunification services. Additionally, PB & J and CYFD were unable to contact Father, who apparently had been arrested for failing to pay a shoplifting fine. As a result, Father missed visitations with Child from late July until late September.

{11} At a permanency hearing in September 2004, CYFD asserted that Father had been slow in engaging in his treatment plan. According to CYFD, Father had stopped attending individual counseling, did not have a stable home or employment, and had recently tested positive for cocaine. CYFD asserted that Child's risk level still remained high and that Father needed to obtain housing and employment and deal with his legal matters. CYFD recommended that Child's plan be changed from reunification to adoption. The district court adopted CYFD's findings and approved the change in plan on October 14, 2004.

{12} On October 25, 2004, CYFD filed a motion for termination of parental rights as to Father and Mother. A joint termination of parental rights hearing began on April 5, 2005. As grounds for termination of Father's parental rights, CYFD asserted that Child was previously adjudicated as an abused and neglected child, that Father had a lack of awareness and empathy about Child's needs, that Father had mental issues

that interfered with his parenting abilities, that Father had demonstrated erratic and threatening behavior, and that Father had failed to demonstrate that he was able to provide for Child's basic needs. Additionally, CYFD asserted that Father failed to complete various requirements of his treatment plan.

{13} On April 21, 2005, the last day of the hearing, the parties and the district court learned that our Court had reversed the district court's prior adjudication of abuse and neglect as to Father. *See Shawna C.*, 2005–NMCA–066, ¶ 40, 137 N.M. 687, 114 P.3d 367. In reversing the adjudication against Father, our Court concluded that

> Evidence of Father's somewhat aged criminal history, his anger, his mental health issues as diagnosed by the psychologist, and the fact that he "permitted" Grandmother to care for Child while Grandmother ingested drugs, while not reflecting exemplary behavior, does not support anything more than a vague inference of future harm. Such an inference provides an insufficient basis for finding either neglect or abuse within the meaning of the statute.

*Id.* ¶ 22.

{14} Upon receiving our opinion in *Shawna C.*, the district court ordered the termination of parental rights hearing continued and asked the parties to submit briefs on the issues raised by the opinion. The court further noted that it would allow CYFD to reopen its case to present additional evidence and witnesses, but stated that it would not allow CYFD to relitigate findings addressed by our Court in *Shawna C.* The district court also asked CYFD to evaluate whether a bonding study or other studies should be done with respect to potentially returning Child to Father. The district court encouraged CYFD to put in place any services that may allow Father to take custody of Child.

{15} With respect to legal custody of Child, the district court concluded that it was not in Child's best interests to be returned to Father at that time, as he lacked stable housing and employment. The court noted that it did not think that Father was capable

of safely parenting Child at that time, but thought that he may be able to acquire the necessarily skills. The district court ordered Father to follow CYFD's requirements as to visitation, housing, and employment. The court concluded that Child should remain in the legal custody of CYFD.

{16} In its briefing to the court, CYFD argued that the district court retained jurisdiction over the matter despite the reversal by our Court. CYFD asked the district court to permit CYFD to reopen its case in the termination of parental rights trial, to allow CYFD to conduct an investigation into Father's current circumstances, to order that Child remain in CYFD custody, and to permit CYFD to amend its motion for termination of parental rights after it conducted its investigation.

{17} Father argued that our Court's ruling foreclosed any attempt to terminate his parental rights in the present case. Father asserted that res judicata was applicable, which barred CYFD from relitigating the issues related to his prior adjudication or from arguing that there had been ongoing neglect by Father. Father further argued that because his abuse and neglect adjudication was reversed, there was no evidence of neglect in the first instance, and therefore CYFD could not assert ongoing neglect by him. Father asked the district court to either return Child to him or retain jurisdiction of the matter until the court believed that it was appropriate to return Child to him. Father also asked the Court to consider placing Child with his sister in Georgia.

{18} After considering both parties' arguments, the district court concluded that it had continuing jurisdiction to hear CYFD's motion for termination of Father's parental rights and to grant other motions or relief as is necessary. The district court granted CYFD's request to do further investigation with respect to Father and to reopen the termination of parental rights trial if necessary. The district court also ordered CYFD to investigate Father's current circumstances to determine whether Father had a safe environment for Child. Additionally, the district court ordered CYFD to work with Father on housing issues. Finally, the district court

denied Father's request to return Child to his custody and stated that it was premature to consider placement with Father's sister.

{19} Less than two months after the prior adjudication of abuse and neglect was reversed, CYFD filed supplemental allegations as to Father for its motion to terminate Father's parental rights. CYFD realleged and incorporated by reference all of the allegations in its previously filed motion for termination of parental rights, with the exception of the reversed adjudication of abuse and neglect by Father. With respect to its supplemental allegations, CYFD alleged that (1) Father had failed to maintain contact with CYFD and Child during his incarceration in July and August 2004; (2) Father was unstable and not in a position to care for Child, as Father lacked stable housing and employment and has demonstrated a lack of concern for Child; and (3) Father was unable to safely care for Child due to his anger and instability.

{20} A permanency hearing was held ten days later. The district court found that Father had made some efforts to comply with the treatment plan and to maintain contact with Child, but that he had not made sufficient progress toward alleviating the causes behind Child's placement in foster care. The court concluded that Child's best interests would be served by maintaining legal custody with CYFD and "implementing a further treatment plan to promote the possible permanent placement of the child, as will be determined in the context of the hearings on the motion for termination of parental rights."

{21} CYFD was permitted to reopen its case regarding the termination of Father's parental rights. At trial, CYFD presented additional evidence that Father was unable to work on possible reunification since the reversed adjudication because he lacked stable housing. Additionally, CYFD alleged that Father began missing visits in July 2005 and subsequently moved to Colorado to live with family members. Father claimed, however, that he had maintained contact with Child via telephone. Child was placed with Father's sister in late September 2005, whereupon Father moved to Georgia. At the

time of the trial, Father was living in a shelter in Georgia and did not yet have permanent employment.

{22} The district court entered an order terminating Father's parental rights on February 15, 2006, approximately thirty months after Child was first taken into custody by CYFD. In its judgment of termination of parental rights, the district court found that Father: (1) "has continually neglected the child, by failing to maintain consistent contact and relationship with the child and by failing to demonstrate any ability to maintain a stable home or means of support for the child"; (2) "has consistently demonstrated by his actions [ ] that he is not able to provide the basic, adequate care needed to meet the child's basic needs"; and (3) "has failed to adequately take advantage of programs designed to assist him in gaining stability and the means to provide for the basic support and care for the child." The district court noted that, as of July 2005, it was futile for CYFD to make further efforts to assist Father and that Father had failed to remedy the causes and conditions that constituted the ongoing neglect of Child. Finally, the court found that it was unlikely that Father would be able to properly parent Child in the foreseeable future. Father appealed.

## DISCUSSION

{23} The issue presented by this case concerns what happens after an adjudication of abuse or neglect is reversed during termination of parental rights proceedings. Although both parties focus their arguments on whether the district court improperly based its decision to terminate Father's parental rights on the reversed adjudication, we think that the procedural questions raised by the reversed adjudication are important enough to merit examination by our Court. *See N.M. Dep't of Human Servs. v. Tapia,* 97 N.M. 632, 634, 642 P.2d 1091, 1093 (1982) (stating that an appellate court may address propositions of law not raised in the district court where "questions of a general public nature affecting the interest of the state at large" are raised and also where the fundamental rights of a party are at stake (internal quotation marks and citation omitted)). Moreover, we observe that the record below

is not sufficiently developed such that resolution of the procedural concerns raised by the reversed adjudication can be adequately resolved on appeal. *See State v. Jade G.,* 2007–NMSC–010, ¶ 25, 141 N.M. 284, 154 P.3d 659. We therefore remand for further proceedings consistent with the procedural outline described below.

{24} Because our analysis requires interpretation of the Abuse and Neglect Act, NMSA 1978, §§ 32A–4–1 to –33 (1993, as amended through 2003), our review is de novo. *State ex rel. Children, Youth & Families Dep't v. Athena H.,* 2006–NMCA–113, ¶ 9, 140 N.M. 390, 142 P.3d 978. To provide the proper context for our opinion, we will begin our analysis with an overview of abuse and neglect proceedings leading up to the termination of parental rights. Relying on these statutory provisions and other applicable case law, we will then describe the procedures to be followed after an adjudication of abuse and neglect is reversed under circumstances similar to the case at bar.

{25} New Mexico's Abuse and Neglect Act applies to those situations in which a child is taken into custody by CYFD based on allegations of abuse, neglect, or abandonment. *See* § 32A–4–6(A); *State ex rel. Children, Youth & Families Dep't v. Maria C.,* 2004–NMCA–083, ¶ 18, 136 N.M. 53, 94 P.3d 796. Within two days of taking protective custody of a child, CYFD must file a petition or release the child to his or her parents or guardians. *See* § 32A–4–7(D); *Maria C.,* 2004–NMCA–083, ¶ 18, 136 N.M. 53, 94 P.3d 796. "A petition alleging neglect or abuse shall not be filed unless the children's court attorney has determined and endorsed upon the petition that the filing of the petition is in the best interests of the child." Section 32A–4–15. Moreover, "[r]easonable efforts shall be made to prevent or eliminate the need for removing the child from the child's home, with the paramount concern being the child's health and safety." Section 32A–4–7(D).

{26} An adjudicatory hearing is held within sixty days of service of the petition. Section 32A–4–19(A)(1); *Maria C.,* 2004–NMCA–083, ¶ 18, 136 N.M. 53, 94 P.3d 796.

At the hearing, the court must determine whether CYFD's allegations of abuse or neglect are supported by clear and convincing evidence. Section 32A–4–20(H). If the court decides that the child is not abused or neglected, as defined in Section 32A–4–2(B) and (E), then it must "dismiss the petition and may refer the family to the department for appropriate services." Section 32A–4–20(H).

{27} On the other hand, if the court does find that the child is abused or neglected, it then proceeds to a dispositional hearing in which the court determines custody of the child and approves any applicable treatment plans. Section 32A–4–20(H) & –22. Within sixty days of the disposition, a judicial review hearing is held in which "the parties shall demonstrate to the court efforts made to implement the treatment plan approved by the court in its dispositional order." Section 32A–4–25(A); *see Maria C.*, 2004–NMCA–083, ¶ 18, 136 N.M. 53, 94 P.3d 796. Additionally, the court may "make supplemental orders as necessary to ensure compliance with the treatment plan and the safety of the child." Section 32A–4–25(A).

{28} An initial permanency hearing is then held within six months of the judicial review. Section 32A–4–25.1(A); *Maria C.*, 2004–NMCA–083, ¶ 19, 136 N.M. 53, 94 P.3d 796. At this first permanency hearing, according to the law in effect at the time of this case, "[t]here is a rebuttable presumption that the child's interest will be best served by returning the child to the natural home." *Maria C.*, 2004–NMCA–083, ¶ 19, 136 N.M. 53, 94 P.3d 796 (citing § 32A–4–25.1(B)). If CYFD is unable to rebut the presumption, the court must either:

(1) dismiss the case and return the child to his parent, guardian or custodian; or

(2) return the child to his parent, guardian or custodian, subject to those conditions and limitations the court may prescribe, including protective supervision of the child by the department and continuation of the treatment plan for not more than six months.

Section 32A–4–25.1(C); *see Maria C.*, 2004–NMCA–083, ¶ 19, 136 N.M. 53, 94 P.3d 796.

{29} A second permanency hearing is held within three months if, at the first hearing, the court did not change the plan or CYFD did not file a motion to terminate parental rights. *Maria C.*, 2004–NMCA–083, ¶ 20, 136 N.M. 53, 94 P.3d 796 (citing § 32A–4–25.1(D) and (E)). "At this stage, the presumption is that adoption or other permanent placement is in the child's best interest." *Id.* (citing § 32A–4–25.1(E)). Thus, unless parents are able to rebut this presumption, the court "must enter an order changing the plan to adoption and relieving CYFD of any further efforts to reunite the child and parent." *Id.* (citing § 32A–4–25.1(F)). On the other hand, if the parents are able to rebut the presumption, the court may either dismiss the case or allow the child to remain in CYFD's custody and continue the reunification plan for another six months. *Id.* (citing § 32A–4–25.1(G)).

{30} The decision by CYFD to seek termination of parental rights is based largely on conduct occurring after the adjudication of abuse or neglect. *Id.* ¶ 30. Additionally, "the Abuse and Neglect Act requires a termination motion to be filed when the child has been in foster care for fifteen out of twenty-two months." *Id.* ¶ 22; *see* § 32A–4–29(K). Before a court may terminate parental rights based on abuse or neglect, it must find by clear and convincing evidence:

(1) that the child [ ] w[as] abused or neglected, (2) that the conditions and causes of the abuse and neglect were unlikely to change in the foreseeable future, and (3) that the CYFD made reasonable efforts to assist [the parent] in adjusting the conditions which rendered [the parent] unable to properly care for the child [ ].

*In re Termination of Parental Rights of Eventyr J.*, 120 N.M. 463, 467, 902 P.2d 1066, 1070 (Ct.App.1995).

{31} On appeal, Father argues that the district court erred by terminating his parental rights following our Court's reversal of his adjudication of abuse or neglect without a new finding of abuse or neglect by Father. According to Father, the district court terminated his parental rights based on " 'continuing' neglect," a finding which demonstrates that the district court relied on the reversed

adjudication. Father contends that the district court's reliance on the reversed adjudication violates principles of law of the case, res judicata, collateral estoppel, and fundamental fairness.

{32} Additionally, Father argues that although the district court may consider his current fitness in making a custody determination as to Child, the court may not use this lack of fitness as grounds to terminate his parental rights. As such, Father argues that the district court's order terminating Father's parental rights should be reversed. Father contends that upon remand, the district court should determine whether there is clear and convincing evidence of "parental unfitness or of irreparable degeneration of the parent-child bond." If not, the district court must return Child to Father's custody. If, on the other hand, the district court does find that one of these conditions exists, Father asserts that the district court must consider custody arrangements that do not result in the termination of Father's parental rights.

{33} While we do not disagree with Father's assertion that the district court may not rely on an adjudication of abuse or neglect that has been reversed on substantive grounds, we are not convinced that the district court did so in the present case. Moreover, we do not believe that the district court is foreclosed from terminating Father's parental rights based on his current inability to care for Child. We nonetheless reverse the termination of Father's parental rights because the district court's findings are not sufficiently developed such that we can determine whether the district court properly terminated Father's parental rights. Additionally, we take this opportunity to describe the steps that should be taken following a reversal of an adjudication of abuse or neglect on substantive grounds.

{34} In addressing the procedural issues raised by this case, we remain mindful of the fact that the Abuse and Neglect Act, as part of the Children's Code, NMSA 1978, §§ 32A-1-1 to -21-7 (1993, as amended through 2003), "must be read as an entirety and each section interpreted so as to correlate as faultlessly as possible with all other sections." *State v. Henry L.,* 109 N.M. 792, 794, 791 P.2d 67, 69 (Ct.App.1990); *see In re Angela R.,* 105 N.M. 133, 137, 729 P.2d 1387, 1391 (Ct.App.1986). Additionally, the provisions of the Children's Code should be interpreted in such a manner as to effectuate its purposes, which include "preservation of family unity when possible." *Henry L.* 109 N.M. at 794, 791 P.2d at 69 (citing § 32A-1-2(A)). Finally, we recognize that in termination of parental rights proceedings, there is often a tension between "the physical, mental and emotional welfare and needs of the child," Section 32A-4-28(A), and the understanding that "parental rights are among the most basic rights of our society and go to the very heart of our social structure." *In re Doe,* 98 N.M. 198, 200, 647 P.2d 400, 402 (1982) (internal quotation marks and citations omitted); *see In re Adoption of J.J.B.,* 119 N.M. 638, 651-52, 894 P.2d 994, 1007-08 (1995). Keeping these considerations in mind, we turn to relevant statutory provisions and case law.

{35} As previously recognized, an appeal of an abuse or neglect adjudication does not deprive the district court of jurisdiction over the matter while the appeal is pending. *Frank G.,* 2005-NMCA-026, ¶ 42, 137 N.M. 137, 108 P.3d 543. This continuing jurisdiction has been deemed "essential to protect both the rights of the parent and the child." *Id.* It is for these very same reasons that we believe that after an adjudication of abuse or neglect is reversed by our Court, the district court, on remand, retains jurisdiction to determine whether the parent prevailing on appeal should regain custody of the child. *Cf. J.J.B.,* 119 N.M. at 651, 894 P.2d at 1007 ("A finding that parental rights were improperly terminated does not mechanically result in the award of custody to the biological parents."); *Helen G. v. Mark J.H.,* 2006-NMCA-136, ¶ 45, 140 N.M. 618, 145 P.3d 98 (remanding after reversal of termination of parent's parental rights for district court to determine custody), *cert. granted,* 2006-NMCERT-010, 140 N.M. 675, 146 P.3d 810; *In re Guardianship of Ashleigh R.,* 2002-NMCA-103, ¶ 13, 132 N.M. 772, 55 P.3d 984 (stating that the reversal of the grandparents' award of guardianship

does not necessarily result in the mother obtaining custody of the child); *State ex rel. Children, Youth & Families Dep't v. C.H.,* 1997–NMCA–118, ¶¶ 10–12, 124 N.M. 244, 947 P.2d 1064 (affirming district court's determination to continue custody in CYFD following dismissal of abuse and neglect petition against parent until the court could investigate and determine the proper placement of the children). We do not believe that an automatic return of a child to his or her parent following a reversal of an adjudication of abuse or neglect is necessarily in the child's best interests, particularly where, as in the present case, the parent has not had actual custody of Child for a number of years. *See J.J.B.,* 119 N.M. at 654, 894 P.2d at 1010 ("It is conceivable that the biological parent, though not unfit and not responsible for the disintegration of the parent-child relationship, may still be incapable of reestablishing the necessary parental bond with the child."); *Ashleigh R.,* 2002–NMCA–103, ¶ 23, 132 N.M. 772, 55 P.3d 984 (recognizing that when a parent has not had custody of a child for an extended period of time, it is difficult to determine whether the parent is capable of safely parenting child). Thus, we conclude that in the present case, the district court had the power to make a custody determination following the reversal of the abuse or neglect adjudication.

■ {36} We have long recognized that "in a custody contest between a parent and a non-parent, the parent should generally prevail unless he or she is found unfit." *Ashleigh R.,* 2002–NMCA–103, ¶ 14, 132 N.M. 772, 55 P.3d 984. "A parent's unfitness can be shown through evidence 'demonstrating parental inadequacy or conduct detrimental to the child,' including but not limited to abuse, neglect, or abandonment." *Id.* ¶ 19 (citation omitted); *see J.J.B.,* 119 N.M. at 654, 894 P.2d at 1010 (holding that in determining the fitness of a parent, "the court should evaluate whether there is clear and convincing evidence of gross misconduct such as incapacity, moral delinquency, instability of character, or inability to provide [the child] with needed care"). Our courts have also held that even if a parent is fit, a court may deny custody if extraordinary circumstances are found to exist. *Ashleigh R.,*

2002–NMCA–103, ¶ 15, 132 N.M. 772, 55 P.3d 984. Extraordinary circumstances arise where, after a long separation between parent and child, the necessary parent-child bond has disintegrated. *Id.* Thus, in the present case, we presume that Child should have been returned to Father at the time the adjudication was reversed, unless the district court determined that Father was unfit or that there were extraordinary circumstances that justified denying Father custody. Such findings should be expressly made by the court. *See In re Adoption of J.J.B.,* 117 N.M. 31, 34, 868 P.2d 1256, 1260 (Ct.App. 1993).

■ {37} In the present case, the district court informed Father that it was not going to give him custody of Child following our Court's reversal of the abuse or neglect adjudication because the court believed that Father was not capable of safely parenting Child due to his lack of housing and lack of stable employment. We believe that this is sufficient evidence from which the court could reasonably conclude that Father was not yet fit to care for Child and that allowing Child to remain in CYFD custody, at least temporarily, was in Child's best interests.

■ {38} We further believe, however, in light of the fact that Father was wrongfully adjudicated to have abused or neglected Child, that the court and CYFD must also seriously consider whether reunification is possible. While we are cognizant of the fact that Child is not a trophy to be awarded to whichever party prevails in court, we also are sympathetic to the fact that, but for the erroneous adjudication of abuse or neglect against Father, he might not be in the position that he is now. *See J.J.B.,* 119 N.M. at 651, 654, 894 P.2d at 1007, 1010. With that in mind, we believe that the district court and CYFD must actually put a transition plan in place in order to attempt to return Child to Father. In the present matter, for example, the district court ordered CYFD to investigate whether Father could regain custody of Child. The court also ordered CYFD to assist Father with his housing issues. What is clearly lacking from the record, however, is any evidence that CYFD actually

complied with these orders or that CYFD even meaningfully considered placing Child with Father following the mandate from our Court.

{39} We do not believe, however, that CYFD is foreclosed from seeking a termination of Father's parental rights. If, as it appears in the case at bar, CYFD does not believe that reunification is possible and that termination of parental rights is in Child's best interests, it can bring new or current allegations of abuse, neglect, or abandonment to the district court's attention. While preferably such allegations would be part of a new petition filed by CYFD, we do not exalt form over substance. *See Mayfield v. Mayfield*, 108 N.M. 246, 249, 771 P.2d 179, 182 (1989). The motion to supplement, filed by CYFD in the present case, could be sufficient if adequately supported by the evidence that we require.

{40} In the present case, it does appear that CYFD attempted to bring new allegations of abuse or neglect to the district court's attention. We observe that less than two months after Father's adjudication of abuse or neglect was reversed, CYFD filed supplemental allegations against Father in support of its motion to terminate Father's parental rights. These supplemental allegations realleged the abuse or neglect allegations against Father in CYFD's original motion to terminate Father's parental rights. Such allegations included his failure to fully comply with various requirements of his treatment plan. CYFD also alleged that Father's inability to maintain stable housing and employment, missed visitations with Child, lack of empathy, and anger issues required the district court to terminate Father's parental rights. While we do not decide whether these allegations of abuse or neglect are sufficient to establish abuse or neglect by clear and convincing evidence, we do have a number of concerns with these supplemental allegations.

{41} For CYFD to prevail on the supplemental allegations, it must also show by clear and convincing evidence that Father's current actions constitute abuse, neglect, or abandonment of Child. *See* § 32A–4–20(H). We do not believe, for example, that Father's failure to comply with various aspects of the treatment plan can be used to demonstrate that Father is an abusive or neglectful parent, unless such actions by Father are serious enough such that they would actually constitute abuse or neglect of Child in their own right. *See In re Mary L.*, 108 N.M. 702, 706, 778 P.2d 449, 453 (Ct.App. 1989) (holding that a parent's failure to comply with a treatment plan cannot be used as evidence of abuse or neglect in the first instance); *see also* § 32A–4–2(B), (E) (defining abuse and neglect). Thus, we reject CYFD's attempts to rely on Father's failure to comply with the requirements of his treatment plan as evidence of his alleged abuse or neglect of Child.

{42} We believe that in order for CYFD to prevail on its new allegations of abuse or neglect, it must also demonstrate by clear and convincing evidence that the prior reversed adjudication and CYFD's own actions did not contribute to the new or current allegations of abuse or neglect against Father. For example, while lack of housing and employment are serious concerns with respect to Father's ability to parent Child, we also observe that there is evidence in the record that suggests that these issues stemmed from the initial adjudication of abuse or neglect. At the time of the adjudication that we reversed, it appears that Father had housing and employment. *See Shawna C.*, 2005–NMCA–066, ¶ 19, 137 N.M. 687, 114 P.3d 367. Father claims that his failure to maintain stable housing and employment following the adjudication was a result of his attempt to fully comply with the requirements of the treatment plan, which required visitation with Child and random urinalyses. Moreover, Father claimed that he had been suffering from depression during the pendency of the proceedings against him, which he also believed impaired his ability to maintain steady employment and stable housing. Additionally, there is evidence in the record to suggest that much of Father's apparent anger stemmed from his belief that Child was wrongly taken into custody. In the context of an abuse or neglect adjudication that is reversed on substantive grounds, the district court must expressly

address such claims in order to ensure that due deference is given to the appellate reversal.

{43} If new allegations of abuse or neglect are made by CYFD, the district court should determine whether the new allegations are supported by clear and convincing evidence. *See* § 32A–4–20(H); *Shawna C.*, 2005–NMCA–066, ¶ 7, 137 N.M. 687, 114 P.3d 367. As previously mentioned, the district court should also make findings with respect to the question of whether the new allegations are actually a result of the prior adjudication against Father or whether the allegations actually constitute new incidences of abuse or neglect. *See Mary L.*, 108 N.M. at 706, 778 P.2d at 453; *see also State ex rel. Children, Youth and Families Dep't v. Lilli L.*, 121 N.M. 376, 382, 911 P.2d 884, 890 (Ct.App. 1995) ("In order to establish 'ongoing child neglect,' there must be clear and convincing evidence of neglect in the first instance, and evidence that such condition has not changed and is unlikely to change in the foreseeable future.").

{44} If the district court does not find clear and convincing evidence of abuse or neglect based on CYFD's new allegations, it should expedite the transition of Child to Father, putting in place any services or plans that may assist in such a transition. Conversely, if the district court decides that there is clear and convincing evidence of new abuse or neglect by Father, it must approve a treatment plan for Father, *see* § 32A–4–22(C), or the court may find that any further efforts by CYFD would be futile. *See* § 32A–4–22(C)(1). We caution, however, that a finding of futility should not be based solely on Father's inability to fully comply with the treatment plan imposed after the earlier reversed adjudication, but rather on the circumstances surrounding the current allegations of abuse or neglect.

{45} If a treatment plan is approved, the court should review compliance with the plan in the same manner as described in the Act. *See* §§ 32A–4–25, –25.1. If, on the other hand, CYFD is able to establish that further efforts to assist Father would be futile, it may then seek termination of parental rights. *See* § 32A–4–28(B). We believe that, although the case at bar presents unusual circumstances, requiring compliance with the provisions of the Act is the only way to ensure that Father's rights as a parent are adequately protected. *See State ex rel. Children, Youth and Families Dep't v. Mafin M.*, 2003–NMSC–015, ¶ 18, 133 N.M. 827, 70 P.3d 1266 ("Due process of law requires that termination proceedings be conducted with 'scrupulous fairness' to the parent." (citation omitted)).

{46} If CYFD decides to pursue termination of Father's parental rights, such rights may only be terminated based on clear and convincing evidence of all of the usual elements required for termination. *See* § 32A–4–28; *Eventyr J.*, 120 N.M. at 467, 902 P.2d at 1070. In addition to making specific findings in line with the procedure outlined above, the district court must find by clear and convincing evidence that the prior reversed adjudication did not contribute to the parent's current situation. Only then is termination of Father's parental rights appropriate.

{47} In the present case, the record indicates that the procedure outlined above was more or less followed by the district court. What is troubling, however, is the lack of any findings indicating that CYFD complied with the district court's orders to assist Father with his housing issues. Nor are there any findings that CYFD actually considered placement with Father following the reversed adjudication, which was something the district court also ordered it to do. Upon remand, the district court should determine whether CYFD complied with the court's order following the reversal of the adjudication against Father.

{48} Equally troubling is the lack of any evidence throughout the entirety of the proceedings that CYFD engaged in any efforts to assist Father with his housing and employment issues, the very issues used by CYFD to terminate Father's parental rights. Moreover, there are no findings in the record with respect to the issue of whether the reversed adjudication and/or CYFD's own actions contributed to the new allegations of abuse or neglect against Father. Upon remand, we instruct the district court to deter-

mine whether CYFD's efforts with respect to Father's housing and employment issues were reasonable, to determine whether CYFD made any efforts after the adjudication was reversed to facilitate any sort of reunification between Father and Child, and to make additional findings as necessary to comply with the procedure outlined above.

**CONCLUSION**

{49} We reverse the district court's order terminating Father's parental rights and remand this case for further proceedings consistent with this opinion. We deny Father's request that we require a different judge to hear this case on remand. *See In re Comm'n Investigation into the 1997 Earnings of U.S. West Commc'ns, Inc.,* 1999–NMSC–016, ¶¶ 41–44, 127 N.M. 254, 980 P.2d 37. We leave to the sound discretion of the district judge the issue of whether to recuse herself.

{50} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and CELIA FOY CASTILLO, Judges.