This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-38965**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**TYYARRI L.,**

Respondent-Appellant,

**IN THE MATTER OF DEANDRE L.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Marie C. Ward, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

The Law Offices of Nancy L. Simmons P.C.
Nancy L. Simmons
Albuquerque, NM

for Appellant

Law Office of Alison Endicott-Quinones
Alison Endicott-Quinones
Albuquerque, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**HANISEE, Chief Judge.**

**{1}** Respondent Tyyarri L. (Mother) appeals from the district court's judgment terminating her parental rights to Deandre L. (Child). On appeal, Mother contends that the district court erred in terminating her parental rights. This Court issued a notice of proposed disposition considering Mother's arguments as raised in her docketing statement and proposing to affirm. Mother has now filed a memorandum in opposition to this Court's notice of proposed disposition, now particularly asserting that her statutory rights and her right to due process during the proceedings were violated. [MIO 15]. Having given due consideration to the arguments raised by Mother, this Court affirms the termination of her parental rights.

**{2}** In this Court's calendar notice, we proposed to conclude that there was sufficient evidence to support the district court's termination of Mother's parental rights. [CN 9] We proposed that the district court appeared to have considered all of the evidence presented regarding whether the causes and conditions that led to Child being brought into the Children, Youth and Families Department's (CYFD) custody had been alleviated, despite Mother's assertions that CYFD did not start visits with Child again following the failure to have a trial home visit. [CN 7, 8] We noted that it did not appear that the district court considered the failure to have a trial home visit as a dispositive finding, but considered all the evidence presented, including that Mother did well with her treatment plan initially, but that as of the January 2020 trial there was no evidence presented that Mother participated in or completed any services since November 2018. [2 RP 422-26; CN 7-8] Further, we also proposed to conclude that CYFD had met its burden of proof and that the evidence demonstrated that Mother failed to make sufficient progress in complying with her treatment plan. [CN 8-9] In sum, we proposed to conclude that there was clear and convincing evidence that the causes and conditions of neglect were unlikely to change in the foreseeable future and that termination of Mother's parental rights was in Child's best interests. [CN 9]

**{3}** In her memorandum in opposition, Mother cites to no authority and presents no new facts or arguments as to these proposed conclusions that persuade this Court that our proposed summary disposition was incorrect. *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law."); *State v. Mondragon*, 1988-NMCA-027, ¶ 10, 107 N.M. 421, 759 P.2d 1003 (stating that "[a] party responding to a summary calendar notice must come forward and specifically point out errors of law and fact[,]" and the repetition of earlier arguments does not fulfill this requirement), *superseded by statute as stated in State v. Harris*, 2013-NMCA-031, ¶ 3, 297 P.3d 374.

**{4}** Now, for the first time, in her memorandum in opposition, Mother contends that the time line and procedures followed by the district court and CYFD denied her due process and the protections of the Abuse and Neglect Act. NMSA 1978, §§ 32A-4-1 to -

35 (1993, as amended through 2019). [MIO 8] Mother asserts that several hearings were untimely held pursuant to the statutory framework. [MIO 11-12] Mother argues that the process adopted by CYFD and "supported by" the district court of "holding Child in limbo beyond the statutory deadlines for permanency review and orders, violated Mother's statutory rights pursuant to the Abuse and Neglect Act, as well as her [d]ue [p]rocess rights." [MIO 15] She claims that CYFD "was allowed to continue to hold Child in custody in a 'wait and see' pattern, when the case should have been dismissed unless [CYFD] had been ready to move to terminate parental rights on the timetable mandated by statute." [MIO 15] Mother acknowledges that "[t]here is no case specifically on point on the issue of holding a child in custody beyond the statutory deadlines for a change in plan or dismissal." [MIO 16] However, Mother points this Court to *State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007-NMCA-070, ¶¶ 27-33, 141 N.M. 692, 160 P.3d 601, arguing that *Benjamin O.* supports a conclusion that termination cannot be supported by a theory of "continuing neglect," such that this Court should reverse the termination or reverse and "remand for additional proceedings to determine whether the termination of parental rights is based on a pure theory of 'continuing neglect,' which was rejected by implication by this Court in *Benjamin O.*" [MIO 17-19; 20-21]

{5}     We construe these arguments as a motion to amend the docketing statement, which did not contend that Mother's statutory or due process rights were violated by the procedures or timeline of her case. *See* Rule 12-210(D)(2) NMRA (stating that "[t]he parties shall not argue issues that are not contained in . . . the docketing statement[, but that t]he Court may, for good cause shown, permit the appellant to amend the docketing statement" and that "[t]he appellant may combine a motion to amend the docketing statement . . . with a memorandum in opposition").

{6}     In order for this Court to grant a motion to amend the docketing statement, the movant must meet certain criteria that establish good cause for our allowance of such amendment. *See State v. Moore*, 1989-NMCA-073, ¶¶ 41-42, 109 N.M. 119, 782 P.2d 91, *overruled on other grounds by State v. Salgado*, 1991-NMCA-044, ¶ 2, 112 N.M. 537, 817 P.2d 730; *State v. Rael*, 1983-NMCA-081, ¶¶ 15-16, 100 N.M. 193, 668 P.2d 309. The essential requirements to show good cause for our allowance of an amendment to an appellant's docketing statement are that (1) the motion be timely, (2) the new issue sought to be raised was either (a) properly preserved below or (b) allowed to be raised for the first time on appeal, and (3) the issues raised are viable. *Moore*, 1989-NMCA-073, ¶ 42.

{7}     As Mother argues, there exists a statutorily-prescribed sequence of events that applies to most CYFD proceedings. *See State ex rel. Children, Youth & Families Department v. Maria C.*, 2004-NMCA-083, ¶¶ 18-23, 136 N.M. 53, 94 P.3d 796 (describing this sequence of events). It does appear that Mother's case was not conducted in accordance with deadlines imposed by the statutory framework. [MIO 11-12] Mother's memorandum in opposition highlights several hearings that appear to have been untimely held. [MIO 13-15] However, Mother does not point this Court to any authority that suggests that an untimely hearing should result in a conclusion of

reversible error. *See Mondragon*, 1988-NMCA-027, ¶ 10; *see also In re Ernesto M., Jr.*, 1996-NMCA-039, ¶ 10, 121 N.M. 562, 915 P.2d 318 (stating an "assertion of prejudice is not a showing of prejudice").

**{8}** We turn to Mother's argument that she was deprived of due process by CYFD's and the district court's failures to follow strictly the statutorily-prescribed time line and framework. "Parental rights cannot be terminated without due process of law." *State ex rel. Children, Youth & Families Dep't v. Rosalia M.*, 2017-NMCA-085, ¶ 9, 406 P.3d 972. "[W]hether an individual was afforded due process is a question of law that we review de novo." *Id.* ¶ 8 (internal quotation marks and citation omitted). "To evaluate the due process owed to a parent in termination proceedings, we use the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 . . . (1976)." *Id.* ¶ 9; *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 19, 133 N.M. 827, 70 P.3d 1266. The *Mathews* test requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. Regarding the first and third prong, the "[p]arents' interest[s] in maintaining a parental relationship with their children is a fundamental right merit[ing] strong protection. The government's interest in protecting the welfare of children is equally significant." *In re Pamela A.G.*, 2006-NMSC-019, ¶ 13, 139 N.M. 459, 134 P.3d 746 (alteration, internal quotation marks, and citation omitted). Therefore, our inquiry focuses on the second factor: "whether the procedures used increased the risk of an erroneous deprivation of Mother's interest and whether additional safeguards would eliminate or lower that risk." *Maria C.*, 2004-NMCA-083, ¶ 37 (alteration, internal quotation marks, and citation omitted). The procedural question here is whether the district court's failure to strictly apply the deadlines and procedural framework of the Abuse and Neglect Act increased the risk of an erroneous deprivation of Mother's interest.

**{9}** "In termination proceedings, the parent has the right under due process to a fair opportunity to be heard and to present a defense . . . [and] the opportunity for meaningful participation." *Mafin M.*, 2003-NMSC-15, ¶ 21 (internal quotation marks and citations omitted). Meaningful participation under due process includes "a reasonable opportunity to refute or defend against a charge or accusation; a reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by constitution or statute; and a hearing before an impartial decision[]maker." *State ex rel. Children, Youth & Families Dep't v. Kathleen D.C.*, 2007-NMSC-018, ¶ 12, 141 N.M. 535, 157 P.3d 714 (internal quotation marks and citation omitted).

**{10}** In this case, Mother has not demonstrated how she was denied meaningful participation in the termination proceedings. Mother's memorandum in opposition asserts that the district court did not strictly meet deadlines required by the Abuse and Neglect Act. [MIO 11-12] However, Mother has not shown us that those delays in her case prohibited her from meaningful participation in the proceedings. For example, Mother does not assert that she did not have the opportunity to confront and cross-examine witnesses put forward by CYFD, was not provided with representation, or was not given a trial before an impartial decision maker. In the district court's judgment on termination, the district court explicitly found that Mother "had proper notice of this trial and had the opportunity to appear and assist in the trial." [2 RP 422] The district court explicitly considered Mother's own testimony at the trial. [2 RP 424] While the process may have been delayed, those delays seem to have presented little risk of erroneous deprivation of Mother's parental rights and, consequently, Mother was not deprived of due process. *See Rosalia M.*, 2017-NMCA-085, ¶ 9.

**{11}** Reliance on *Benjamin O.* is no more helpful to Mother. Mother asserts that this Court "rejected by implication" a termination of parental rights "based on a pure theory of 'continuing neglect' " in *Benjamin O.* [MIO 20-21] In *Benjamin O.*, this Court reversed the underlying finding of abuse and neglect. 2007-NMCA-070, ¶ 13. Under those circumstances, we clarified that it would be improper to rely on the father's non-compliance with a treatment plan to prove that he was an abusive or neglectful parent in the first instance. *See id.* ¶ 41. Here, Child validly was adjudicated an abused and neglected child after Mother pleaded no contest to the allegations [1 RP 127], and Mother's treatment plan was based upon this finding of abuse and neglect [1 RP 140-43]. Accordingly, it was not improper for the district court to consider Mother's level of compliance with her court-ordered treatment plan in assessing whether the conditions and causes of the neglect and abuse were likely to change in the foreseeable future, even if that treatment plan was in place for a longer time than the statutory framework anticipates.

**{12}** Based on the above, we therefore consider Mother's issues on her statutory rights and due process non-viable, and we deny the motion to amend. *See Moore*, 1989-NMCA-073, ¶¶ 42-43.

**{13}** For the reasons stated above and in this Court's notice of proposed disposition, the district court's order terminating Mother's parental rights is affirmed.

**{14}  IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**