This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40393

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**PHELISHA L.,**

Respondent-Appellant,

and

**MARK M.,**

Respondent,

**IN THE MATTER OF MARK M., SEAN M.,
CHESTON M., and NURIYAH M.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Marie C. Ward, District Court Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Cravens Law LLC
Richard H. Cravens, IV

Albuquerque, NM

for Appellant

Deborah Gray Law, LLC
Deborah Gray
Albuquerque, NM

Guardian Ad Litem

**MEMORANDUM OPINION**

**HANISEE, Judge.**

**{1}** Respondent-Appellant Phelisha L. (Mother) appeals the district court's judgment terminating her parental rights to her four children (Children), asserting various errors on the part of New Mexico Children, Youth and Families Department (CYFD) as well as the district court. For the reasons that follow, we affirm.

**DISCUSSION**

**{2}** This case arose following CYFD's April 2018 petition alleging that Mother, along with Children's father (Father), abused and neglected Children.[1] As later explained by the district court, the petition alleged that Children "had suffered sexual abuse or sexual exploitation inflicted by" Father, and—of particular relevance to Mother—Children "had been physically or sexually . . . abused when [C]hildren's [Mother] knew or should have known of the abuse and failed to take reasonable steps to protect the [C]hild[ren] from further harm." Mother pled no contest to the allegations set forth in the petition, and Children were adjudicated as abused and neglected in August 2018 and placed in CYFD custody. CYFD created a treatment plan for Mother, which was updated throughout the pendency of the case and required, in pertinent part, that Mother (1) participate in psychosocial, psychological, psychosexual, substance abuse, domestic violence, and mental health assessments; (2) participate in random drug testing; (3) attend supervised visits with Children; (4) obtain and demonstrate learned parenting skills; (5) attend nonemergency appointments for Children; and (5) maintain safe and stable housing. In April 2020, CYFD filed a motion for termination of Mother's parental rights. Following a series of hearings on CYFD's motion, the district court filed its judgment terminating Mother's parental rights. This appeal followed.

**{3}** Mother argues that the district court's judgment terminating her parental rights was erroneous for the following reasons: (1) it was premised, in part, upon a "unilateral" determination by a therapist to discontinue a treatment modality that, in turn, rendered Mother unable to complete the required treatment plan; (2) the termination of Mother's

---

1Although Father is likewise subject to the district court's judgment terminating parental rights, he is not a party to this appeal.

parental rights was not supported by sufficient evidence; and (3) the proceedings below deprived Mother of her due process rights.

## I.     Mother's Argument Regarding Discontinuation of Treatment

**{4}**     Mother argues that one of her therapists, Caren Waters, elected to discontinue Mother's treatment solely because Mother refused to acknowledge a new disclosure of abuse made by two of the Children during safe house interviews following the adjudication of Children as abused and neglected—namely, an incident wherein Mother allegedly attempted to drown one of the Children. Mother contends that the discontinuation of her treatment with Waters rendered Mother unable to complete her treatment plan, and thus precluded reunification with Children.

**{5}**     The record reflects that a significant portion of Mother's work with Waters was the completion of "Protection Clarification Letters" (PCLs), which were intended to address Children's disclosures of abuse by fully restating Children's statements in order to both acknowledge such disclosures and reassure Children that future abuse will not occur. The process of completing the letters is, according to the record, quite specifically structured and is intended to be completed in tandem with the treating provider—in this case, Waters. During the hearings on CYFD's motion to terminate Mother's parental rights, Waters testified that during the process to complete the PCLs, Mother would be required to write a letter to each of the Children "addressing specifically what each [of the Children had] said [regarding the abuse they had experienced], using their exact words, so that Mother" could then acknowledge that "this was wrong, or what [she] did was wrong." According to Waters, the PCLs are not intended to serve as an apology by the parent, but instead are intended to allow the parent to state "steps to prove to the [C]hild[ren] that [the abuse] will never happen again."

**{6}**     Mother claims that Waters unilaterally discontinued Mother's treatment because Mother refused to admit to the nonadjudicated disclosure by Children that Mother had attempted to drown one of them, and that such discontinuation ultimately resulted in the termination of her parental rights. This contention is misplaced and is a mischaracterization of the record. The record reflects that Waters' decision to discontinue Mother's therapy was based on Mother's general demonstrated unwillingness to acknowledge the full scope of abuse endured by Children—not merely Mother's unwillingness to admit to the drowning incident alleged by two of the Children. At an August 2021 hearing on CYFD's motion to terminate, Waters testified that Mother would not acknowledge at that time—for the purpose of the PCL process—instances of abuse that were included in both the original CYFD abuse and neglect petition to which Mother admitted by way of her no contest plea, as well as in safe house interviews with Children. *See* Rule 10-342(A)(2) NMRA (stating that a respondent in a children's court proceeding "may make an admission by . . . entering a plea of no contest"). Such instances included evidence that Mother had knowledge of the sexual abuse of Children by Father, despite continuing to deny such knowledge, as well as instances wherein Mother and Father would get into physical fights with one another in front of Children,

abusive behavior Mother also did not admit. Waters further testified that Mother was only willing to acknowledge that she had failed to protect Children from Father's abuse, but would not acknowledge any of her own knowledge of the abuse or involvement in the abuse.

{7}    Despite Mother's arguments on appeal to the contrary, Mother's unwillingness to follow the PCL procedure by acknowledging instances of abuse and admitting her knowledge of and role in that abuse did not solely or even primarily turn on her refusal to acknowledge the attempted drowning alleged by two of the Children. Rather, Waters testified at a subsequent hearing in January 2022 that Mother maintained her refusal to acknowledge multiple disclosures—including those to which Mother had already pled no contest—that would need to be included in her PCLs in order to comport with her treatment plan. The district court heard testimony regarding how Children were affected by Mother's continued refusal to acknowledge either the scope of abuse Children endured or her role therein, including, crucially, signs of distress and discomfort that stood in the way of reunification. Further, Mother's therapists and the district court believed Mother had not sufficiently progressed in her own therapy, demonstrated in part by Mother's inability to acknowledge disclosures of specific abuse by Children, which was a required step in the therapeutic process. The district court noted the weight it gave the testimony of Mother's providers, and further stated that it did not find Mother to be credible as related to her testimony regarding the PCL process, finding that Mother "lacks the capacity to truly understand what her [C]hildren need in order to heal." This Court does not "assess the credibility of the witnesses, deferring instead to the conclusions of the [district court]." *State ex rel. Child., Youth & Fams. Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. We therefore decline to reweigh the credibility assigned to the testimony below.

{8}    Mother cites to *State ex rel. Children, Youth & Families Department v. Carmella M.*, 2022-NMCA-052, 517 P.3d 284, for the proposition that "the failure to adjudicate [a] new allegation [of abuse] prior to termination of parental rights is reversible error," but does not further develop such argument. *Carmella M.*—in which we addressed a district court adjudication of abuse, not a termination of parental rights—does not support such a proposition, *see id.* ¶ 1, and Mother does not cite any other authority that does so. "Where a party cites no authority to support an argument, we may assume no such authority exists." *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482. Thus, to the extent Mother asks us to consider, as a novel appellate issue, whether new allegations of abuse—which are disclosed for the first time during the course of a termination of parental rights proceeding following an abuse and neglect adjudication— must, themselves, be separately adjudicated prior to termination of parental rights, we decline such request. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal."); *see also Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them," which "creates a strain on judicial resources and a substantial risk of error. It is of no benefit either to the parties or to future litigants for this Court to

promulgate case law based on our own speculation rather than the parties' carefully considered arguments."). We conclude there to be no error related to the district court's consideration of Waters' discontinuation of Mother's treatment.

## II.      Substantial Evidence

**{9}**      We next address Mother's arguments regarding the evidence supporting the district court's judgment below. When reviewing a judgment terminating parental rights, we review whether the district court found "by clear and convincing evidence: (1) that the child was abused or neglected, (2) that the conditions and causes of the abuse and neglect were unlikely to change in the foreseeable future, and (3) that [CYFD] made reasonable efforts to assist the parent in adjusting the conditions which rendered the parent unable to properly care for the child." *State ex rel. Child., Youth & Fams. Dep't v. Benjamin O.*, 2007-NMCA-070, ¶ 30, 141 N.M. 692, 160 P.3d 601 (alterations, internal quotation marks, and citation omitted); *see* NMSA 1978, § 32A-4-28(B)(2) (2005, amended 2022) (same). Here, only the second and third such factors are at issue, given Mother's admission by no contest plea to the allegations in the abuse and neglect petition filed against her by CYFD. *See* Rule 10-342(A). Thus, we examine whether CYFD presented clear and convincing evidence that the conditions and causes of the abuse and neglect were unlikely to change in the foreseeable future, and whether CYFD made reasonable efforts to assist Mother in adjusting the necessary conditions. *See Vanessa C.*, 2000-NMCA-025, ¶ 24 ("The standard of proof in cases involving the termination of parental rights is clear and convincing evidence.").

**{10}**      "Clear and convincing evidence is . . . evidence that instantly tilts the scales in the affirmative when weighed against the evidence in opposition and the fact[-]finder's mind is left with an abiding conviction that the evidence is true." *State ex rel. Child., Youth & Fams. Dep't v. Lance K.*, 2009-NMCA-054, ¶ 16, 146 N.M. 286, 209 P.3d 778 (alteration, internal quotation marks, and citation omitted). "We will uphold the district court's judgment if, viewing the evidence in the light most favorable to the judgment, [the district court] could properly determine that the clear and convincing standard was met." *State ex rel. Child., Youth & Fams. Dep't v. Hector C.*, 2008-NMCA-079, ¶ 11, 144 N.M. 222, 185 P.3d 1072 (internal quotation marks and citation omitted). Therefore, the relevant question before us is "whether the [district] court's conclusion, when viewed in the light most favorable to the decision below, was supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶ 31, 132 N.M. 299, 47 P.3d 859.

**{11}**      Regarding Mother's assertion that CYFD did not present sufficient evidence that the causes and conditions that brought Children into CYFD's custody were unlikely to change in the foreseeable future, we note that Mother does not specifically challenge the evidence supporting the district court's termination judgment on this basis. Nor does she articulate evidence that supports a different outcome. Indeed, Mother does not present an argument as to how, specifically, the district court erred in determining that the causes and conditions that brought Children into CYFD's custody were unlikely to

change in the foreseeable future. "We will not review unclear arguments, or guess at what [a party's] arguments might be." *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. Accordingly, we decline to speculate as to how Mother might argue that the district court erred in determining that substantial evidence demonstrated that the causes and conditions that brought Children into CYFD's custody were unlikely to change in the foreseeable future. *See Elane Photography, LLC*, 2013-NMSC-040, ¶ 70.

**{12}** We turn now to Mother's assertion that CYFD failed to make reasonable efforts to assist Mother in adjusting the conditions which rendered the parent unable to properly care for Children. "What constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *State ex rel. Child., Youth & Fams. Dep't v. Josie G.*, 2021-NMCA-063, ¶ 45, 499 P.3d 658. "CYFD's efforts need only be reasonable, not perfect," and "CYFD need not do 'everything possible' to assist a parent; instead, the focus is on whether it has done the minimum required by law." *Id.*

**{13}** Mother argues that she was not given proper notice of Children's nonemergency medical appointments, that CYFD failed to provide extra clarity and assistance for Mother, that CYFD failed to give Mother referrals for treatment providers, and that, generally, CYFD's communication with her was insufficient. The flaw with Mother's arguments in this regard is that Mother has selectively presented the record as it relates to the efforts made by CYFD in assisting Mother to adjust relevant conditions. Indeed, Mother neither discusses nor challenges the findings made by the district court related to CYFD's efforts to assist in this case—including the findings specifically highlighting the extra efforts made by CYFD to reconcile Mother's stated trust issues with CYFD, as well as communication and efforts on the part of the assigned permanency plan worker. Rather, Mother includes only selected conflicting evidence from the record to support her assertions that CYFD failed to make reasonable efforts to assist Mother in adjusting her circumstances. "An unchallenged finding of the trial court is binding on appeal." *Seipert v. Johnson*, 2003-NMCA-119, ¶ 26, 134 N.M. 394, 77 P.3d 298. Moreover, when the district court is presented with conflicting evidence, "we defer to its determinations of ultimate fact, given that we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses." *Skeen v. Boyles*, 2009-NMCA-080, ¶ 37, 146 N.M. 627, 213 P.3d 531; *see also State ex rel. Dep't of Hum. Servs. v. Williams*, 1989-NMCA-008, ¶ 7, 108 N.M. 332, 772 P.2d 366 ("Even in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies."). For these reasons, we conclude that, as determined by the district court based on its extensive findings, substantial evidence demonstrated CYFD's reasonable efforts to assist Mother in adjusting the relevant circumstances.

## III.    Due Process

**{14}** Woven throughout each of Mother's arguments is an assertion that the proceedings below deprived her of her due process rights, stating that CYFD's treatment process was a "sham process" that "was never intended to be successful." It is axiomatic that "[a] parent's fundamental liberty interest in the care, custody, and management of their children is well established." *State ex rel. Child., Youth & Fams. Dep't v. Brandy S.*, 2007-NMCA-135, ¶¶ 22-23, 142 N.M. 705, 168 P.3d 1129 (internal quotation marks and citation omitted). However, a parent does not have "absolute rights in their children; rather, parental rights are secondary to the best interests and welfare of the children." *State ex rel. Child., Youth & Fams. Dep't v. John R.*, 2009-NMCA-025, ¶ 27, 145 N.M. 636, 203 P.3d 167 (internal quotation marks and citation omitted).

**{15}** Mother raises a procedural due process claim,[2] and "[w]e evaluate whether a termination proceeding satisfies due process using the balancing test articulated in *Mathews v. Eldridge,* 424 U.S. 319 . . . (1976)." *Brandy S.*, 2007-NMCA-135, ¶ 23. "The *Mathews* test requires the weighing of [the parent's] interest; the risk to [the parent] of an erroneous deprivation through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and the government's interest." *Id.* "[T]he decisive issue centers on the second factor of the *Mathews* test," that is, whether the procedures used increased the risk of erroneous deprivation of a parent's interest in parenting her children, and whether additional procedural safeguards would eliminate or lower that risk. *Id.* Whether a parent is "afforded due process does not depend on a showing that they would have prevailed," rather a parent "need only demonstrate that there is a reasonable likelihood that the outcome might have been different." *State ex rel. Child., Youth & Fams. Dep't v. Pamela R.D.G.*, 2006-NMSC-019, ¶ 14, 139 N.M. 459, 134 P.3d 746 (internal quotation marks and citation omitted).

**{16}** As explained above, we discern no error as to any of the other issues Mother asserts on appeal. Thus, we discern no erroneous deprivation of Mother's rights based on the procedures used during this adjudication process. *See Brandy S.*, 2007-NMCA-135, ¶ 23. Further, Mother does not argue that there is a reasonable likelihood that the outcome of the termination proceedings might have been different had Mother's treatment with Waters resolved differently, or had any other procedure taken place. *See State ex rel. Child., Youth & Fams. Dep't v. Browind C.*, 2007-NMCA-023, ¶ 31, 141 N.M. 166, 152 P.3d 153 (requiring a respondent parent to "show that there is a reasonable likelihood that the outcome might have been different" had additional procedural safeguards been provided (emphasis, internal quotation marks, and citation omitted)); *see also Brandy S.*, 2007-NMCA-135, ¶ 23. Rather, Mother's due process claims are broadly and generally presented as arising from her other assertions of error.

---

[2]In her reply brief, Mother asserts her due process claim as substantive rather than procedural. However, Mother's brief in chief cites authorities related only to procedural due process. Because Mother fails to raise a substantive due process claim in her brief in chief and likewise fails to cite relevant authority related to substantive—rather than procedural—due process, we decline to consider Mother's due process claims as substantive. *See Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 15, 288 P.3d 902; *see also In re Adoption of Doe*, 1984-NMSC-024, ¶ 2.

Having found there to be no error on such bases, we likewise conclude there to be no violation of Mother's due process rights.

**CONCLUSION**

**{17}**    For the above reasons, we affirm.

**{18}    IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**JANE B. YOHALEM, Judge**