2008-NMCA-087

187 P.3d 189

**STATE of NEW MEXICO ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,**

v.

**LISA A., Respondent–Appellant,**

and

**In the Matter of Andrew A., a Child.**

**No. 27,188.**

Court of Appeals of New Mexico.

May 13, 2008.

Simon Romo, Chief Children's Court Attorney, Daniel J. Pearlman, Children's Court Attorney, Santa Fe, NM, for Appellee.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Appellant.

**OPINION**

CASTILLO, Judge.

{1} Mother appeals the trial court's dismissal of abuse and neglect proceedings, as well as the placement of her son (Child) with Father. We affirm the trial court.

## I.  BACKGROUND

{2} Child was born on April 24, 2004. On January 17, 2005, Mother brought Child to the emergency room. Because Mother's explanation for bruises on Child's head and face was not consistent with the injuries, the hospital referred Child to the Children, Youth and Families Department (Department). Child was alleged to be neglected on January 20, 2005. Initially, Father denied paternity of Child, and the two had no contact. After a Department-instigated DNA test established paternity, Father began visiting with Child.

{3} On January 20, 2006, the trial court entered a judgment and disposition and found by clear and convincing evidence that Father had neglected Child and that Mother had abused Child. Mother continued to work her treatment plan with the Department, and a trial home visit began on April 22, 2006. The Department established a target reunification date of July 28, 2006, for Mother and Child.

{4} Father appealed the judgment of neglect as to him. On June 19, 2006, this Court reversed the trial court, after which Father filed an emergency motion to dismiss the abuse and neglect proceeding and for immediate placement of Child with Father. The trial court granted Father's motion, dismissed the entire abuse and neglect case, and placed Child with Father, subject to a visitation schedule with Mother. Mother appeals the trial court's disposition.

## II.  DISCUSSION

{5} Mother makes four arguments on appeal, and we address each in turn.

### A.  *In re Mary L.*

{6} Mother first contends that the trial court improperly applied *In re Mary L.*, 108 N.M. 702, 778 P.2d 449 (Ct.App.1989), to the facts of the present case. We review a trial court's application of the law to the facts de novo. *Paz v. Tijerina*, 2007–NMCA–109, ¶ 8, 142 N.M. 391, 165 P.3d 1167. To the extent that we are required to interpret the Abuse and Neglect Act, NMSA 1978, §§ 32A–4–1 to –34 (1993, as amended through 2005), our review is also de novo.

*State ex rel. Children, Youth & Families Dep't v. Benjamin O.*, 2007–NMCA–070, ¶ 24, 141 N.M. 692, 160 P.3d 601.

{7} Mother's position is that the trial court relied too heavily on *In re Mary L.* and that the Department was required to continue providing services to Mother, despite the outcome of Father's appeal. In response, the Department argues that once this Court held that there was insufficient evidence to support an adjudication of neglect against Father, the Department no longer had the authority to maintain custody of Child. We agree with the Department.

{8} In the case *In re Mary L.*, the mother and the father were divorced, and the father had custody of the couple's children. 108 N.M. at 703–04, 778 P.2d at 450–51. Based on allegations that the father had been sexually abusive, the children were placed in the custody of the Human Services Department (department). *Id.* After the father was taken into police custody, the department contacted the mother. *Id.* at 704, 778 P.2d at 451. Although the mother wanted custody of her children, the department withheld custody, based on the mother's failure to comply with certain department-imposed requirements. *Id.* As a result, the mother challenged the department's authority to withhold custody. *Id.* Ultimately, this Court held that the department was required to turn over custody of the children to the mother or "secure a judicial determination ... that [the] mother was not entitled to custody of the children." *Id.* at 706, 778 P.2d at 453. In our analysis of the issue, we clarified the basis for our decision:

> In a dispute between the natural parent and third parties concerning the custody of a child, the natural parent is entitled to custody of the child unless the third party makes an affirmative showing that the parent is unfit. In a judicial proceeding, this entitlement is reflected in a presumption of fitness, based on the assumption that it is in the child's best interest to be with the parent.

*Id.* at 705, 778 P.2d at 452 (citations omitted).

{9} In the present case, the Department could not establish that Father was unfit or that he neglected Child. According to Moth-

er, *In re Mary L.* is distinguishable because in that case, the department had physical custody of the children, while in the instant case, Child was living with Mother as a part of a reunification plan implemented by the Department. We find this distinction to be without merit. Mother does not dispute that Child remained in the Department's legal custody. Despite the trial home visit, there was no guarantee that Child would remain in Mother's care or that Mother would ultimately receive custody of Child at the conclusion of the proceedings.

{10} Mother also cites *State ex rel. Children, Youth & Families Dep't v. C.H.*, 1997–NMCA–118, 124 N.M. 244, 947 P.2d 1064, a case in which *In re Mary L.* was distinguished by this Court. *C.H.*, 1997–NMCA–118, ¶ 6, 124 N.M. 244, 947 P.2d 1064. In *C.H.*, the state had established that the children were in need of services and that the department thus had "an obligation to assure that the children receive those services." *Id.* Mother does not suggest that Child has a continuing need for Department services but, rather, that *she* is entitled to services. However, Mother provides no authority for the proposition that she has a legal entitlement to Department services when the Child is no longer the subject of an abuse and neglect proceeding. We therefore see no basis for Mother's distinction of *In re Mary L.* based on *C.H.*

{11} In the alternative, Mother relies on Section 32A–4–8 for the proposition that the placement with Father should have been temporary. Section 32A–4–8(A) allows the court to temporarily place a child who has been adjudicated neglected "with a relative of the child who is willing to guarantee to the court that the child will not be returned to the alleged abusive or neglectful parent ... without the prior approval of the court." We are not persuaded. This Court has already established that "[w]here the custodial parent has neglected the child, the noncustodial parent is not merely a placement alternative; instead, the noncustodial parent is entitled to custody unless the Department can establish the noncustodial parent is unfit." *In re Mary L.*, 108 N.M. at 705, 778 P.2d at 452. Because this Court determined that there

was insufficient evidence that Father neglected Child, the Department had no basis upon which to require the Department to maintain custody of Child. We conclude that *C.H.* and Section 32A-4-8(A) do not provide sufficient bases for a distinction between *In re Mary L.* and the present case, and we hold that the trial court properly applied *In re Mary L.*

## B. Best Interests

{12} Mother next argues that the trial court, by immediately transferring custody to Father, did not properly consider the best interests of Child. We review the trial court's determination of Child's best interests for substantial evidence. *See Benjamin O.*, 2007–NMCA–070, ¶ 37, 141 N.M. 692, 160 P.3d 601. As we previously stated, we interpret statutes de novo. *Id.* ¶ 24. Mother makes two arguments regarding the best interests of Child: (1) Father failed to present sufficient evidence to satisfy the statutory custody modification factors, and (2) the court did not receive sufficient evidence to make a best interests determination. We begin with the custody factors.

{13} Mother relies on *State ex rel. Children, Youth & Families Department v. Michelle B.*, 2001–NMCA–071, 130 N.M. 781, 32 P.3d 790, in order to make her first point. In *Michelle B.*, a mother had two daughters by different fathers, and it was discovered that the younger daughter had been abused by her father. *Id.* ¶¶ 2, 6. The department stepped in, removed the girls from the mother's home, and began an abuse and neglect proceeding against the mother and the abusive father. *Id.* ¶ 8. Upon hearing of the events, the older daughter's father petitioned the trial court for an order to change the custody arrangement so that he could take custody of the older daughter. *Id.* ¶¶ 8–9. In that context, this Court observed that "[t]he criteria which must be considered when modifying a custody order are set forth in NMSA 1978, § 40–4–9(A) (1977)." *Michelle B.*, 2001–NMCA–071, ¶ 26, 130 N.M. 781, 32 P.3d 790. Based on this language, Mother contends that Father failed to present sufficient evidence to satisfy the factors found in Section 40–4–9(A) to determine Child's best interests. We disagree because

we believe that Mother misreads *Michelle B.* and Section 40–4–9(A) to apply to all custody determinations.

{14} The custody modification factors described in Section 40–4–9(A) are to be applied in the context of divorce proceedings; the factors are found in Article 4 of the Domestic Affairs chapter, and Article 4 is titled "Dissolution of Marriage." Unlike the situation in *Michelle B.*, the trial court's placement of Child with Father was in response to the dismissal of abuse and neglect proceedings, and the placement of Child with Father did not modify any existing custody arrangements between Child's parents. We therefore consider *Michelle B.* and Section 40–4–9(A) to be inapposite.

{15} Mother also argues that there was insufficient evidence for the trial court to determine that the immediate change in custody was in Child's best interests. This Court recently cautioned against "an automatic return of a child to his or her parent following a reversal of an adjudication of abuse or neglect" because such a placement is not "necessarily in the child's best interests, particularly where, as in the present case, the parent has not had actual custody of [the c]hild for a number of years." *Benjamin O.*, 2007–NMCA–070, ¶ 35, 141 N.M. 692, 160 P.3d 601. Relying on *Benjamin O.*, Mother argues that the trial court was not required to place Child with Father as a result of the reversal of the neglect adjudication and that instead, the court could have refused to place Child with Father if there was evidence concerning one of two situations: either (1) Father was unfit, or (2) extraordinary circumstances existed. *See id.* ¶ 36. Mother acknowledges that there is no evidence that Father is unfit, but she maintains that there is evidence of extraordinary circumstances because the necessary parent-child bond was never created between Father and Child.

{16} In *Benjamin O.*, we declared that "[e]xtraordinary circumstances arise where, after a long separation between parent and child, the necessary parent-child bond has disintegrated." *Id.* Mother presumably bases her argument on the facts that Father has never had custody of Child and that his

first visit with Child was after the Department took custody. The trial court was also concerned about the placement, and at the hearing on Father's motion, the court questioned the Department at length in order to ascertain whether a change in custody from Mother to Father was in Child's best interests. The Department responded by noting that Child had often visited with Father, who behaved appropriately; that Child connected with Father; that Father's home was prepared for Child; and that Father was willing to maintain visitation with Mother. After hearing this, the trial court stated that Child's best interests were "the bottom line." Based on the evidence received at the hearing, we conclude that the court could properly determine whether there was a relationship between Father and Child as contemplated by *Benjamin O.* and that the court considered Child's best interests when making the placement.

## C. Due Process

{17} Mother asserts that her due process rights were violated when the trial court dismissed the abuse and neglect petition and failed to provide a hearing before removing Child from her custody. "The question of whether an individual was afforded due process is a question of law[, which] we review de novo." *State ex rel. Children, Youth & Families Dep't v. Senaida C.*, 2008–NMCA–007, ¶ 16, 143 N.M. 335, 176 P.3d 324 (internal quotation marks and citation omitted). Mother makes two arguments in support of her due process theory. First, she contends that she had a protected liberty interest in pursuing the course of her treatment program with the Department. Second, Mother challenges the court's refusal to entertain witness testimony at the hearing on Father's motion. We examine each argument in turn.

{18} We acknowledge that "[t]he interest of parents in the care, custody, and control of their children is a fundamental liberty interest." *In re Pamela A.G.*, 2006–NMSC–019, ¶ 11, 139 N.M. 459, 134 P.3d 746. Mother argues, however, that her physical custody of Child was entitled to special, and apparently constitutional, protection because Mother was Child's only family and because

they were on the verge of being reunited. In order to support this position, Mother directs our attention to the Abuse and Neglect Act. We agree with Mother that Section 32A–4–22(C) (1999) (amended 2005) mandates that after a child is found to be neglected or abused, the Department shall make "[r]easonable efforts ... to preserve and reunify the family, with the paramount concern being the child's health and safety." However, Mother fails to appreciate that in the present case, Child was no longer considered "neglected or abused." *Id.* A child is neglected if he

> is without proper parental care and control or subsistence, education, medical or other care or control necessary for the child's well-being because of the faults or habits of the child's parent, guardian or custodian or the failure or refusal of the parent, guardian or custodian, when able to do so, to provide them.

Section 32A–4–2(E)(2) (1999) (amended in 2005). Because Father was able to parent Child, he was no longer neglected. Therefore, the Department is not required by the Abuse and Neglect Act to reunify Child with Mother. Mother's other citations to the Department's responsibilities under the Abuse and Neglect Act suffer from the same defect—Mother's failure to recognize that if one parent is able to care for Child, there is no further need for Department intervention. Mother provides no further authority for the proposition that she has a fundamental liberty interest in receiving Department services under these circumstances, and we will thus not consider the contention. *See Vigil v. Fogerson*, 2006–NMCA–010, ¶ 32, 138 N.M. 822, 126 P.3d 1186 (observing that we do not consider propositions that are unsupported by citation to authority). We now turn to Mother's second due process argument.

{19} At the hearing, both the Department and Child's guardian ad litem mentioned that there was some evidence, although unsubstantiated, of further abuse of Child by Mother. Mother was prepared with witnesses to refute these allegations. The trial court did not allow Mother to present the witnesses. Mother claims that the refusal to hear evidence to rebut the allegations

was a denial of due process. The Department points out that the trial court heard no evidence at all on the allegations of further abuse and that the court did not consider those allegations when it placed Child with Father. We agree with the Department. The trial court relied on *In re Mary L.* and the Department's failure to establish that Father was an unfit parent. Presentation of evidence on the issue of unsubstantiated claims regarding alleged abuse by Mother would not have afforded to Mother a greater opportunity to challenge Father's fitness as a parent. *See State ex rel. Children, Youth & Families Dep't v. William M.*, 2007–NMCA–055, ¶ 37, 141 N.M. 765, 161 P.3d 262 ("The essence of due process is notice and an opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks and citation omitted)). Accordingly, we hold that the Department did not violate Mother's due process rights, either by failing to continue the reunification process or by refusing to hear evidence on the allegations of abuse.

**D.    Ineffective Assistance of Counsel**

{20} Mother contends that she received ineffective assistance of counsel during her case. In reviewing an ineffective assistance of counsel claim, we consider the proceedings as a whole. *Id.* ¶ 53. In order to establish ineffective assistance of counsel, Mother must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that Mother was prejudiced by counsel's failure. *See Senaida C.*, 2008–NMCA–007, ¶ 26, 143 N.M. 335, 176 P.3d 324. Mother contends that counsel was unprepared to argue *In re Mary L.* at the hearing and that counsel's performance therefore fell below the standard of reasonableness because she failed to familiarize herself with the applicable case law. The Department responds that Mother's counsel was familiar with *In re Mary L.* at the hearing on Mother's motion to reconsider, if not at the original hearing. Indeed, review of the transcript shows that at the initial hearing on Father's motion to dismiss, Mother's counsel made the same argument regarding *In re Mary L.* that was made to this Court: *In re Mary L.* is distinguishable because in the present case, Mother, not the Department, had physical custody of Child. We conclude that Mother's counsel had a sufficient grasp of the relevant case law at the initial hearing and that counsel's performance thus did not fall below an objective standard of reasonableness.

**III.    CONCLUSION**

{21} We affirm the trial court. As the trial court noted, Mother and Father may contest issues of physical custody between them in an already open case in domestic relations court.

{22} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.