The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>September 26, 2022</u>

**No. A-1-CA-39480**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT,**

      Petitioner-Appellee,

v.

**JAMES M.,**

      Respondent-Appellant,

**and**

**FARRAH S.,**

      Respondent,

**IN THE MATTER OF JOVAN M.,**
**JAMIA M., and JARROM M.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF SAN MIGUEL COUNTY**
**Flora Gallegos, District Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Assistant Children's Court Attorney
Albuquerque, NM

for Appellee

Susan C. Baker
El Prado, NM

for Appellant

Victoria W. Doom
Las Vegas, NM

Guardian Ad Litem

**OPINION**

**YOHALEM, Judge.**

{1}     James M. (Father) appeals the district court's order terminating his parental rights to his three children (Children).[1] This case is subject to the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901 to 1963. ICWA sets "minimum Federal standards" for the removal of an Indian child from their family, for continued state custody of an Indian child, and, most relevant here, for the termination of parental rights to an Indian child. 25 U.S.C. § 1902.

{2}     Father raises two issues on appeal, which he contends require reversal of the district court's judgment terminating his parental rights. First, Father contends that ICWA and New Mexico state law require the district court at the adjudicatory hearing to find that Father abused or neglected Children by evidence beyond a reasonable doubt, rather than by clear and convincing evidence. We conclude that ICWA and New Mexico law together require that a district court's findings of abuse and neglect at an adjudication involving an Indian child be supported by clear and convincing evidence, not evidence beyond a reasonable doubt. We, therefore, find no error in the district court's findings at adjudication.[2]

---

[1] The parental rights of Farrah S. (Mother) were terminated in the same proceeding. Mother has not appealed.

[2] We note that the New Mexico Legislature adopted a new statute governing abuse and neglect and custody proceedings concerning Indian children in 2022: the Indian Child Protection Act (ICPA), NMSA 1978, §§ 32A-28-1 to -42 (2022). This

{3}     Father next contends that the district court's finding pursuant to ICWA, 25 U.S.C. § 1912(d), that the Children, Youth & Families Department (CYFD) made "active efforts" to reunite Father and Children and prevent the breakup of the Indian family was not supported by sufficient evidence at the termination of parental rights (TPR) hearing. We agree with Father that CYFD failed to present evidence sufficient to support the district court's finding beyond a reasonable doubt that the efforts CYFD made to assist Father complied with the "active efforts" requirement of ICWA. We reverse and remand on this basis for proceedings consistent with this opinion.

**BACKGROUND**

{4}     We briefly review the circumstances leading to Children being taken into custody by CYFD, the facts supporting the adjudication of neglect by Father, and Father's treatment plan.

{5}     Children were in the care of Mother when the abuse and neglect petition was filed on February 14, 2019. Father was living in Louisiana and working as a long-haul truck driver. Mother had previously been involved with Zuni Pueblo's social

case was filed in 2018; therefore, we rely on the provisions of the New Mexico Abuse and Neglect Act (ANA), NMSA 1978, §§ 32A-4-1 to -35 (1993, as amended through 2022), as well as ICWA, which were in place before the adoption of ICPA. We note that there is no significant difference relevant to the issues discussed in this opinion between the federal and state law applied in this opinion and ICPA.

2

services agency due to substance abuse resulting in neglect of Children. She did not successfully work her treatment plan.

{6}     The two older Children had lived with Father from March 2018 until he returned them to Mother eight months later in November 2018. Father testified at the TPR hearing that he returned them, in part, because he believed Mother had stopped using drugs and was doing better. Father knew that a tribal judge had returned Mother's other two children to her in June or July 2018, supporting his belief that Mother was doing better. He hoped at that time to have an ongoing relationship with her.

{7}     Father testified at the TPR hearing that when he visited in November, he had some concerns but did not see obvious signs that Mother was using drugs. Later, when he called Mother, she started hanging up on him and sounded strange. Father called the police to ask them to do a welfare check on Children. When he did not hear anything about the welfare check, Father made a trip to New Mexico to check on Children. Finding that Mother was drinking, he called CYFD. Although he believed Mother's behavior put Children at risk, he left Children with her and returned to his home and job in Louisiana.

{8}     In mid-February 2019 Father learned from Mother that Children had been taken into state custody. Father contacted CYFD the next day. At the adjudicatory hearing, Father testified that he did not have the ability to care for Children

immediately. He said he was looking for a new job that would allow him to work locally so he could be home with Children. A CYFD investigator testified at the adjudicatory hearing that Father had been able to obtain low-cost housing when Children were living with him, but no longer qualified when he was living on his own. The investigator reported that Father did not have appropriate housing to take care of Children at the time of the adjudication. The district court found, by clear and convincing evidence, that Father had neglected Children, pursuant to Section 32A-4-2(G)(2) (defining a "neglected child" to mean a parent's inability to provide adequate care because of the parent's faults or habits), and found as well, also by clear and convincing evidence, that continued custody of Children by Father was "likely to result in serious emotional or physical damage" to Children, a finding required by ICWA, 25 U.S.C. § 1912(e), because he had placed Children at risk by leaving them with Mother, knowing Mother was drinking and using drugs.

{9} The district court's findings state that the court was not persuaded that Father's calls to police and CYFD were adequate to protect Children. Father was ordered to work a treatment plan that required him to obtain safe and stable housing, participate in the Circle of Security parenting classes (a parenting program offered by CYFD), participate in a psychological evaluation and follow the psychologist's recommendations, and participate in a domestic violence assessment and follow the recommendations.

4

{10} We discuss additional evidence later, as necessary to our decision.

**DISCUSSION**

**I.** **Proof of Neglect or Abuse at an Adjudicatory Hearing in an ICWA Case in New Mexico Is by Clear and Convincing Evidence**

{11} Father first alleges on appeal that the district court erred in its adjudicatory judgment in failing to apply a beyond a reasonable doubt standard of proof to its finding that Children were neglected by Father. The district court, in its adjudicatory judgment, found by clear and convincing evidence that Father had neglected Children, pursuant to Section 32A-4-2(G)(2) (defining a "neglected child" to mean a parent's inability to provide adequate care because of the parent's faults or habits). Father alleges that the district court applied the wrong standard of proof.

{12} Father's argument conflicts with our precedent applying the clear and convincing evidence standard of proof to all required findings at an adjudicatory hearing involving an Indian child. In our decision in *State ex rel. Children, Youth & Families Department v. Maisie Y.*, 2021-NMCA-023, 489 P.3d 964, we held that the state law requirement that the district court find abuse or neglect "on the basis of clear and convincing evidence," § 32A-4-20(H), applies to adjudicatory proceedings concerning an Indian child. *Maisie Y.*, 2021-NMCA-023, ¶ 21. We see no reason to reconsider this precedent, and Father offers none.

{13} We note that the ICWA requirement for an additional finding that the return to the parent's custody and care is "likely to result in serious emotional or physical

5

damage to the child" must be proved at the adjudicatory hearing "by clear and convincing evidence," not by evidence beyond a reasonable doubt. 25 U.S.C. § 1912(e). It is only at the TPR hearing that ICWA requires proof beyond a reasonable doubt of the likelihood of serious emotional or physical damage to the child if returned to the parent's care. *See* 25 U.S.C. § 1912(f) (providing that the standard of proof at termination of parental rights is beyond a reasonable doubt); *cf.* 25 U.S.C. § 1912(e) (providing that standard of proof at adjudication must be supported by clear and convincing evidence).

{14} New Mexico law adopts these same standards of proof, allowing proof by clear and convincing evidence at an adjudication involving an Indian child, and requiring that ICWA requirements and state law requirements alike be proved by evidence beyond a reasonable doubt at a hearing to terminate parental rights to an Indian child. *See Maisie Y.*, 2021-NMCA-023, ¶ 19 ("[W]e hold that Section 32A-4-29(I) dictates the grounds supporting termination of parental rights in ICWA cases, including the determination that a child has been abused or neglected under Section 32A-4-28(B)(2), must be proved beyond a reasonable doubt.").

{15} In this case, the district court properly found neglect by Father under Section 32A-4-2(G)(2) at the adjudicatory hearing, applying the clear and convincing evidence standard of proof, and in contrast, made its finding of neglect at the TPR

6

hearing by evidence beyond a reasonable doubt.[3] We do not see any error in these findings or in the standard of proof applied by the district court at either the adjudicatory hearing or the TPR hearing.

**II.     The District Court's Finding That CYFD Made "Active Efforts" to Assist Father Toward the Goal of Reunification Is Not Supported by Substantial Evidence in the Record**

{16}    To terminate parental rights in proceedings brought under the ANA when those proceeding are not subject to ICWA, the district court is generally required to find that CYFD made "reasonable efforts" to "assist the parent in adjusting the conditions that render the parent unable to properly care for the child." Section 32A-4-28(B)(2). In a termination of parental rights proceeding subject to ICWA, however, this standard is heightened: CYFD must prove that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." 25 U.S.C. § 1912(d).[4]

---

[3]We note that in addition to finding neglect or abuse beyond a reasonable doubt under our state law, termination of parental rights under ICWA also requires a finding beyond a reasonable doubt "that the continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child," as required by 25 U.S.C. § 1912(f) of ICWA. Father's argument on appeal challenged only the district court's finding of neglect under state law.

[4]Section 1912(d) of ICWA reads as follows: "Any party seeking to effect a . . . termination of parental rights to, an Indian child under [s]tate law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." *Id.*

7

{17} We begin our discussion of the sufficiency of the evidence to establish that CYFD made "active efforts" to provide Father with remedial services and rehabilitative programs designed to prevent the breakup of Children's family with a review of the law defining "active efforts." We then turn to the record to determine whether the evidence is sufficient to support the district court's finding that the degree of certainty required by the beyond a reasonable doubt standard, CYFD made "active efforts" toward the goal of reuniting Father and Children. Concluding that the evidence is insufficient to support the court's finding that "active efforts" were made, we reverse.

## A. ICWA's "Active Efforts" Requirement

{18} This Court has held that the "active efforts" standard imposed by ICWA is a "more involved and less passive standard than that of reasonable efforts." *State ex. rel. Child., Youth & Fams. Dep't v. Yodell B.*, 2016-NMCA-029, ¶ 20, 367 P.3d 881, *overruled on other grounds*, *Maisie Y.*, 2021-NMCA-023. *Yodell B.* describes the distinction as follows:

> Passive efforts are where a plan is drawn up and the client must develop his or her own resources towards bringing it to fruition. Active efforts . . . is where the state [permanency worker] takes the client through the steps of the plan rather than requiring that the plan be performed on its own.

2016-NMCA-029, ¶ 17 (internal quotation marks and citation omitted). "The term active efforts, by definition, implies heightened responsibility compared to passive

8

efforts. Giving the parent a treatment plan and waiting for the parent to complete it would constitute passive efforts. Active efforts require more than pointing the parent in the right direction, it requires 'leading the horse to water.'" *State ex rel. Child., Youth & Fams. Dep't v. Keon H.*, 2018-NMSC-033, ¶ 42, 421 P.3d 814 (alterations, internal quotation marks, and citations omitted).

{19} When construing ICWA, we accord substantial weight to the federal ICWA regulations and interpretive guidelines published by the Bureau of Indian Affairs. *See State ex rel. Child., Youth & Fams. Dep't v. Marlene C.*, 2011-NMSC-005, ¶ 18, 149 N.M. 315, 248 P.3d 863; *State ex rel. Child., Youth & Fams. Dep't v. Douglas B.*, 2022-NMCA-028, ¶ 16, 511 P.3d 357, *cert. granted* (S-1-SC-39139, Apr. 19, 2022). We therefore turn to the definition of "active efforts" found in the federal ICWA regulations, 25 C.F.R. § 23.2 (2018). That regulation gives eleven nonexclusive examples of ways in which a state agency can meet the "active efforts" requirement. The regulation reads, in relevant part, as follows:

> Active efforts means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family. Where an agency is involved in the child-custody proceeding, active efforts must involve assisting the parent . . . through the steps of a case plan and with accessing or developing the resources necessary to satisfy the case plan. To the maximum extent possible, active efforts should be provided in a manner consistent with the prevailing social and cultural conditions and way of life of the Indian child's Tribe and should be conducted in partnership with the Indian child and the Indian child's parents, extended family members, Indian custodians, and Tribe. Active efforts are to be tailored to the facts and circumstances of the case and may include, for example:

(1)     Conducting a comprehensive assessment of the circumstances of the Indian child's family, with a focus on safe reunification as the most desirable goal;

(2)     Identifying appropriate services and helping the parents to overcome barriers, including actively assisting the parents in obtaining such services;

. . . .

(7)     Supporting regular visits with parents or Indian custodians in the most natural setting possible as well as trial home visits of the Indian child during any period of removal, consistent with the need to ensure the health, safety, and welfare of the child;

(8)     Identifying community resources including housing, financial, transportation, mental health, substance abuse, and peer support services and actively assisting the Indian child's parents or, when appropriate, the child's family, in utilizing and accessing those resources;

(9)     Monitoring progress and participation in services;

(10)    Considering alternative ways to address the needs of the Indian child's parents and, where appropriate, the family, if the optimum services do not exist or are not available.

{20}    We next apply the standard set out in federal law and regulation to the evidence concerning CYFD's efforts to assist Father and reunite Children's family.

**B.      The Undisputed Evidence Was Insufficient to Support the District Court's Finding That CYFD Made "Active Efforts"**

{21}    In reviewing the sufficiency of the evidence of CYFD's efforts, we bear in mind that CYFD was required to prove that it made "active efforts" by evidence beyond a reasonable doubt: "[T]he evidence and inferences drawn from that

10

evidence must be sufficiently compelling so that a hypothetical reasonable fact[-]finder could have reached a subjective state of near certitude" about its conclusion. *State v. Maes*, 2007-NMCA-089, ¶ 12, 142 N.M. 276, 164 P.3d 975 (internal quotation marks and citation omitted). Our standard of review, therefore, is whether, "viewing the evidence in the light most favorable to [CYFD], the fact[-]finder could properly determine that the [beyond a reasonable doubt] standard was met." *In re Termination of Parental Rights of Eventyr J.*, 1995-NMCA-087, ¶ 3, 120 N.M. 463, 902 P.2d 1066. "We review [the district] court's application of the law to the facts de novo." *State ex rel. Child., Youth & Fams. Dep't v. Lisa A.*, 2008-NMCA-087, ¶ 6, 144 N.M. 324, 187 P.3d 189.

{22} CYFD called only two witnesses to testify about the efforts made to assist Father. Amber Gurule, Father's CYFD permanency planning worker and Rebecca Mathews-Geng, a New Mexico counseling provider who attempted to provide Father an online parenting class. It was undisputed that Father lived outside New Mexico both before and after Children were taken into CYFD custody. Ms. Gurule testified that for the first six months following his adjudication of neglect on April 15, 2019, until September or October 2019, Father was difficult to pin down, and CYFD spent time tracking him through Louisiana, Texas, Illinois, and North Dakota. Father was a long-haul truck driver during this period with no permanent residence. Ms. Gurule testified that she contacted the child protective agencies in several

11

different states to obtain referral lists for Father based on Father's representation that he was living in or planning to move to these states. Drawing all inferences in favor of the district court's finding of fact, it was reasonable based on this testimony for the district court to conclude that CYFD did what it could to assist Father, and that the failure to do more was excused by Father's itinerant life and the inference that Father did not stay in one place long enough for CYFD to offer him more substantial assistance.

{23} In September or October 2019, however, nine months before his parental rights were terminated, Father moved to North Dakota. He informed CYFD that he had obtained a job in the local oil fields and would be living in Bismarck, North Dakota. Despite this change in Father's circumstances, Ms. Gurule did not describe any greater effort to seek help for Father in obtaining services in North Dakota. She reported calling the child protective services agency in North Dakota to obtain a referral list for Father. She referred Father for a psychological evaluation in North Dakota, which Father successfully completed in January 2020. The evaluation's only recommendation was parenting classes, something already part of Father's treatment plan. No local class was available, so CYFD offered Father an online parenting class with a New Mexico provider. Father struggled with the computer technology to access that class via an online platform called telehealth and was able to complete only one of twelve sessions. The provider testified, and Father agreed, that he had

more difficulty than usual with the access instructions. CYFD tried to help with computer access, but Father continued to struggle and was not able to complete the class. CYFD sent Father the workbooks on anger management, domestic violence, and parenting, usually used when parents are incarcerated, which Father completed. CYFD, however, plainly did not believe that the workbooks were sufficient to satisfy the requirement of Father's treatment plan that he obtain training in those areas. CYFD made no effort either to evaluate Father's parenting skills after he completed the workbooks or to find a local consultant in North Dakota who could work with Father in person if he had not made sufficient progress through the workbooks.

{24}     The only other effort CYFD described was arranging two video visits with Children twice a week on Wednesdays and Thursdays. Father visited with Children remotely about twice a week between twenty minutes and one hour. CYFD admitted that Father was faithful in initiating calls to CYFD on visiting days and remaining in contact with CYFD throughout the case.

{25}     CYFD contends on appeal that the efforts described were the "affirmative, active, thorough, and timely efforts" required to constitute "active efforts" under ICWA to reunite Father and Children. We do not agree. The federal ICWA regulations specify that "[a]ctive efforts are to be tailored to the facts and circumstances of the case." 25 C.F.R. § 23.2. "Active efforts" include a "comprehensive assessment" of Father's circumstances and needs, 25 C.F.R.

§ 23.2(1), and active assistance in identifying community resources and overcoming barriers to services, given the parent's circumstances, 25 C.F.R. § 23.2(2), (8). If the parent confronts barriers to services, CYFD is expected to offer alternative ways to meet a parent's needs, 25 C.F.R. § 23.2(10). CYFD must also monitor and report to the court on a parent's progress, 25 C.F.R. § 23.2(9).

{26} The undisputed evidence showed that CYFD (1) had not provided active assistance in obtaining services for Father, (2) had not developed or proposed alternative ways of meeting Father's need for parenting classes in light of his difficulty with computer technology, (3) had not facilitated in-person visits with Children, (4) had not monitored Father's progress, (5) provided no assistance to Father in obtaining appropriate housing for him and Children, and (6) did not assess either the home Father ultimately found without CYFD assistance prior to the termination of his parental rights, or Father's ability to care for Children in his North Dakota home without creating a likelihood of serious emotional or physical damage to Children. CYFD's efforts to assist Father in North Dakota, where he lived for eight months before the TPR hearing, were limited to calling that state's child protective agency to obtain referral lists to give to Father. Merely providing a referral list and instructing the parent to contact the providers and arrange services and provide their own progress reports—the primary effort CYFD made in this case— have been held by both our Supreme Court and this Court to be insufficient to satisfy

the "active efforts" requirement of ICWA. *See Keon H.*, 2018-NMSC-033, ¶ 42 ("Active efforts require more than pointing the parent in the right direction, it requires 'leading the horse to water.'" (alteration, internal quotation marks, and citation omitted)); *see also Yodell B.*, 2016-NMCA-029, ¶ 26 (holding that CYFD pointing the parent in the direction of service providers is not sufficient under ICWA).

{27} CYFD never made any effort to assess Father's progress, something which is clearly required by the ICWA regulations defining active efforts. CYFD never requested that a home study be performed by the child protective services agency in North Dakota.[5] When Father reported to the district court at a permanency hearing in December 2019, six months before the TPR hearing, that Father had found a social services worker in North Dakota who had agreed to assist him and asked how he should proceed, the court directed him to connect this person to Ms. Gurule, rather than directing CYFD to make contact through North Dakota's child protection agency. Once again, Father was left to develop his own resources. This Court has held that when "'the client must develop his or her own resources'" to bring a case

---

[5]Our Legislature has facilitated interstate cooperation in assessing both the adequacy of housing and the ability to parent when placement of children out of state is contemplated by adopting the Interstate Compact on the Placement of Children, NMSA 1978, §§ 32A-11-1 to -7 (1977, as amended through 1993). CYFD never sought the assistance of Louisiana or North Dakota in assessing Father's home, his needs, or his progress.

plan to fruition, the agency has not made active efforts. *Yodell B.*, 2016-NMCA-029, ¶ 17 (quoting *A.A. v. State, Dep't of Fam. & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999)). By CYFD's own admission, that is what was expected of Father.

{28}     To the extent counsel for CYFD suggests that it is excused from making active efforts to assist Father because he was not living in New Mexico, it misapprehends the law. Living in another state does not excuse CYFD's failure to follow both federal and New Mexico law in a termination of parental rights proceeding any more than it excuses CYFD from assisting a parent who is living in another country. *See State ex rel. Child., Youth & Fams. Dep't v. Alfonso M.-E.*, 2016-NMCA-021, ¶ 64, 366 P.3d 282 (holding that "New Mexico law does not relieve CYFD of its statutory mandate to make reasonable efforts to assist the parent in adjusting the causes and conditions of neglect simply because the parent has been deported to another country"). Where the parent remains in contact with CYFD, participates in their treatment plan, and indicates a desire to reunite with their children, as Father did in this case, the burden remains on CYFD to meet statutory requirements.[6] *See id.*

---

[6]We notice a significant difference between the active efforts made with Children's mother, who is a tribal member, and with Father, who is not. CYFD is required by ICWA to make "active efforts" to reunite an Indian child with that child's family. The "active efforts" requirement is not limited to the Indian parent. 25 U.S.C. § 1912(d); 25 C.F.R. § 23.2 ("Active efforts means affirmative, active, thorough, and timely efforts intended primarily to maintain or reunite an Indian child with his or her family.").

16

{29}     We conclude that the undisputed evidence presented by CYFD of the efforts made to reunite Father and Children is not sufficient to reasonably support the district court's finding that CYFD made the "active efforts" to provide Father with remedial services and rehabilitative programs designed to prevent the breakup of the family, as required by 25 U.S.C. § 1912(d).

**CONCLUSION**

{30}     For the stated reasons, we reverse the termination of Father's parental rights. We remand to the district court with direction to require CYFD to promptly assess both Father's home and his ability to care for Children without a likelihood of serious emotional or physical damage to Children and to initiate active efforts to transition Children to Father's care. If circumstances amounting to neglect or abuse under the New Mexico ICPA are found, such that return to Father's custody would likely result in serious emotional or physical damage to Children, CYFD may file a new petition for neglect or abuse, and comply in such proceedings with the New Mexico ICPA.

{31}     **IT IS SO ORDERED.**

_____
**JANE B. YOHALEM, Judge**

17

**WE CONCUR:**

_____
**KRISTINA BOGARDUS, Judge**

_____
**GERALD E. BACA, Judge**

18